IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DEWEY MACK EVANS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-201 |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner DEWEY MACK EVANS has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his aggravated kidnapping conviction out of the 47th District Court of Randall County, Texas, and the resultant eighty-year sentence.  For the reasons set forth, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

A jury found that on the evening of May 17, 2006, petitioner committed aggravated kidnapping when he grabbed Cecily Tripplehorn from behind, threw her into his pickup truck, and threatened her with a knife.  (*State v. Evans*, No. 19095-A, "Reporter's Record" [hereinafter RR], vol. 5, pgs. 149-51 (47th Dist. Ct. Aug. 14, 2007)).  Ms. Tripplehorn fought Mr. Evans and eventually escaped with the help of a passerby.  (*Id.* 155-58).  Petitioner Evans presented a claim of self-defense at the trial, but the jury found Evans guilty and sentenced him to eighty years' in prison.

The conviction and sentence were affirmed on direct appeal, and a petition for discretionary review was refused. *Evans v. State*, No. 07-07-0377-CR, 2009 WL 57036 (Tex. App.– Amarillo Jan. 9, 2009, pet. ref'd). Petitioner filed a state application for a writ of habeas corpus and a protective federal petition for a writ of habeas corpus. This Court held the federal petition in abeyance until the Court of Criminal Appeals denied the state application without written order, *see Ex Parte Evans*, WR-74,728-01, Order on Application for 11.07 Writ of Habeas Corpus (Oct. 20, 2010). This federal habeas case was reopened at that point.

II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is in custody in violation of the United States Constitution and the laws of the United States for the following reasons:

1. The State withheld favorable evidence prior to trial, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. Petitioner's trial counsel was ineffective because he failed to interview potential witnesses or seek appointment of an investigator, prepare for trial, or go into trial with a strategy.

3. Petitioner's trial counsel was ineffective because he failed to ask for a continuance after learning of the prosecution's *Brady* violation.

4. Petitioner's trial counsel was ineffective because he failed to ask for an instruction on a lesser included offense.

5. Petitioner's trial counsel was ineffective because he failed to request an instruction on intoxication in mitigation of punishment.

6. Petitioner's appellate counsel was ineffective in several aspects, all of which are detailed below.

7. The prosecutor improperly commented on petitioner's right to remain silent.

8. The trial court erred in several aspects, as detailed below.

III.
STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain habeas corpus relief in federal court with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision contrary to clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Here, the Texas Court of Criminal Appeals heard and adjudicated, on the merits, most of the claims petitioner Evans now presents in his federal habeas corpus petition when it denied petitioner's application for state habeas relief without a written order.  *Ex Parte Evans*, WR-74,728-01; *see Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect.  Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied, Neal v. Epps*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

Petitioner has failed to meet that burden.  Rather than explaining why the state court's determination was unreasonable, petitioner has merely restated the grounds he presented to the state court. He has not established the state court unreasonably applied federal law or made an unreasonable determination of the facts.  *See id.*  Further, even if petitioner had correctly claimed unreasonableness by the state court, there is nothing in the record or in petitioner's arguments to support such a contention.  A review of petitioner's claims confirms this petition should be denied.

IV.

MERITS

A.  *The* Brady *Violation*

In his first ground, petitioner contends the prosecution withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to disclose, prior to trial, a variance in the victim's recollection.

The victim, Ms. Tripplehorn, was taken to the emergency room following the attack where a police officer took her written statement (Ms. Tripplehorn's hands were badly injured and she was unable to write out the statement).  In that written statement, Ms. Tripplehorn indicated she was sitting in her vehicle when petitioner grabbed her.  (RR, vol. 5, pgs. 167-68).  Her testimony at trial, however, was that she had already exited the vehicle when she was grabbed.  (*Id.* at 168).  Ms. Tripplehorn testified she had met with officials from the District Attorney's office "several months" prior to the trial and had informed those officials of the variance between the written statement and her recollection about where she was when she was grabbed.  Petitioner now contends, as he did at the time of trial and throughout all state court proceedings, that the prosecution violated *Brady* by not informing the defense of the variance at the time it was brought to the prosecution's attention.

All criminal defendants have a constitutionally protected privilege to request and obtain from the prosecution any exculpatory evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed.  *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (citing *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196).  "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt."  *Id.*, 104 S.Ct. at 2532.

There are three elements of a *Brady* claim: (i) the evidence at issue is favorable to the accused, (ii) the State suppressed the evidence, and (iii) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280, 119 S.Ct. at 1948. Evidence is material if it would have put the whole case in such a different light as to undermine confidence in the verdict. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

Petitioner's *Brady* claim fails because the evidence petitioner Evans bases his *Brady* claim upon is not material. The exact location of Ms. Tripplehorn at the time she was abducted has no bearing on the criminal offense, i.e. whether Mr. Evans grabbed Ms. Tripplehorn out of her vehicle or grabbed her immediately after she exited and as she was walking has no bearing on whether he ultimately abducted her and threatened her at knife point. *See* Tex. Pen. Code Ann. § 20.04(b) (detailing the offense of aggravated kidnapping). There is no reasonable probability that, had the evidence been disclosed to the defense earlier than at trial, the outcome would have been different. *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948. Petitioner contends defense counsel could or would have changed the entire defense strategy had the prosecution timely disclosed the variance. As the state court pointed out, however, apart from speculating as to an increase in possible witnesses (which is addressed below) petitioner does not specify how his trial *strategy* would have changed with earlier notice of the variance or how his defense would have otherwise benefitted from such advance notice. *Evans v. State*, 2009 WL 57036, at *3 (quoting *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in a constitutional sense.").

Petitioner also fails to show this evidence was suppressed. *Brady* claims involve "the discovery, *after trial* (emphasis supplied) of information which had been known to the prosecution but unknown to the defense." *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397. Federal courts have long held that evidence uncovered *at* (emphasis supplied) trial does not form the basis for a *Brady* claim. *See Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (holding there was no basis for a *Brady* claim where the defense learned of several variances between the victim's written statement given immediately following the crime and her trial testimony when the variance was discovered at trial and the defense fully cross-examined the victim on the variance); *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir.1985) (holding the prosecution did not suppress evidence where *Brady* materials were disclosed at trial and reasoning "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have, and indeed, should have been"); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir.1993) ( "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.") (citation and internal quotation marks omitted). Mr. Evans's trial attorney rigorously cross-examined Ms. Tripplehorn about the variance between her written statement and testimony to the point of accusing her of aggravated perjury. (RR, vol. 5, pgs. 166-72, 179). In his closing statement, counsel "repeatedly recounted [Ms.] Tripplehorn's inconsistent statement in detail while attacking her credibility." *Evans v. State*, 2009 WL 57036, at *3. Indeed, counsel opened his closing statement with "Cecily Tripplehorn is a liar." (RR, vol. 6, pg. 150). Because the variance in the victim's statements was available to and well-utilized by the defense at trial, petitioner cannot show that it was suppressed for *Brady* purposes. *See Lawrence*, 42 F.3d at 257; *McKinney*, 758 F.2d at 1049-50.

Finally, petitioner fails to show prejudice.  Petitioner contends he suffered prejudice because, had he known of the variance before trial, the whole focus of the defense would have changed because defense counsel would have known to look for "other spectators at the ballpark as well as players" who possibly observed the incident.  ("27 U.S.C. § 2254 Habeas Corpus Brief in Support," doc. 12, pg. 11 (Nov. 1, 2010)).  This argument is purely speculative, as petitioner fails to indicate how counsel could have possibly found these people even with advance notice of the variance in the victim's statement or otherwise show (beyond speculation) how he was unable to avail himself of exculpatory witness testimony.  *See Ross v. Estelle*, 695 F.2d 1008, 1011 (5th Cir. 1983) (holding "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").

Petitioner has failed to show Ms. Tripplehorn's variance in her recollection was material.  He has likewise failed to demonstrate a violation of the three elements of a *Brady* violation.  *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948.  This claim is without merit.

### B.  Ineffective Assistance of Trial Counsel

In his second, third, fourth, and fifth grounds, petitioner contends he received ineffective assistance of trial counsel.  The proper standard for judging a petitioner's contention he is entitled to relief on the ground his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).  Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial.  *Id.* at 687, 104 S.Ct. at 2064.  An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution.  *Id.*, 104 S.Ct. at 2064.  That is, counsel's performance

must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.   A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance.  *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial.  *Id.* at 687, 104 S.Ct. at 2064.  Specifically, to prove prejudice a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair."  *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).   "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).  A showing of significant prejudice is required.  *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993).

### 1.   Failure to Investigate

In his second ground, petitioner contends counsel was ineffective when he failed to interview potential witnesses, seek the appointment of an investigator, or otherwise prepare for trial and go to trial with a defensive strategy.  In his affidavit attached the State's response to petitioner's state habeas corpus application, petitioner's trial counsel states,

> Upon my appointment to the case, I promptly reviewed the State's file to review all incident reports, witness statements, lab reports and the like.  I also reviewed all scientific testing which has been completed on physical evidence either seized from the crime scene or from Applicant's residence.  My review of the State's file persuaded me that there was no need to request funds in order to hire my own experts to test the State's evidence.

> I held several, lengthy, in-person conferences with Applicant at the Randall County Detention Center. During these conferences, Applicant told me everything he knew or could remember about the case and I followed up on each and every lead he provided. Every witness whose name he provided to me I contacted and interviewed. I also went to the crime scene and made a videotape . . . In short, it is my opinion that my investigation into the facts of the case was complete and adequately prepared me for trial.

(*Ex Parte Evans*, WR-74,728-01, Record Developed Upon Application for Writ of Habeas Corpus [hereinafter SHCR], Affidavit of James Wooldridge, pg. 46 (Aug. 25, 2010)); *see* 28 U.S.C. § 2254(e) (mandating all factual determinations made by a state court are presumed to be correct).

This affidavit outlining the investigation defense counsel undertook overcomes any allegation of deficient performance. This is especially so considering the fact that the Court's review of trial counsel's performance is highly deferential. *See Strickland*, 466 U.S. 689, 104 S.Ct. at 2065. Clearly, petitioner's trial attorney was functioning as the counsel guaranteed by the Sixth Amendment, and the state court's decision denying petitioner relief on this issue was not unreasonable. *See Neal*, 286 F.3d at 235.

Moreover, petitioner fails to show prejudice. Petitioner does not present a viable claim or defense based upon counsel's failure to interview potential witnesses. He has not identified any potential witness nor has he detailed exactly what such persons' testimonies would have been. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Petitioner's claims regarding counsel's failure to investigate or prepare for trial are insufficient for federal habeas corpus relief. Petitioner has not identified any benefit which would have occurred from additional investigation and relief will not issue based simply upon unsupported allegations. *See Wilkerson v. Collins*, 950 F.2d

1054, 1065 (5th Cir. 1992) (holding a petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate).

### 2.  Failure to Prepare for Trial

Petitioner also contends counsel was ineffective because he failed to have any trial strategy. In the above-referenced affidavit from petitioner's trial attorney, the attorney details his trial strategy. Because the case was "a classic swearing match," counsel's strategy was to "paint the complainant as someone with little or no credibility."  (SHCR at pg. 47).  This strategy was reflected in counsel's witness examinations and statements throughout the trial.  Counsel also states in his affidavit, that he explained the entire defensive strategy to petitioner Evans, who agreed with it.  (*Id.* 48-49).  Thus, petitioner's allegation that counsel went into trial without a defensive strategy is flatly contradicted by his trial attorney and by the record.  (*See* SHCR, pgs. 47-49).  The state courts found petitioner's allegation to be without merit, and this Court accepts the state courts' determinations based upon the record evidence.  *See* 28 U.S.C. § 2254(e).

### 3. Other Failings

Petitioner also avers counsel was ineffective for failing to recall witnesses after Ms. Tripplehorn's testimony; catch the purported *Brady* violations (detailed in part A, above) at the time the prosecutor first mentioned them during opening statements or during grand jury testimony; or present mitigation testimony at the punishment phase of trial.[1]

Petitioner Evans fails to demonstrate deficient performance.  Although Evans complains of counsel's failure to recall witnesses to testify after the cross-examination of Ms. Tripplehorn, the record shows counsel did attempt to impeach a police officer, on recall, about the variance in Ms.

---

[1]  Petitioner's allegations regarding the presentation of mitigation testimony during the punishment phase of trial was not presented in any state proceeding and is not exhausted for federal habeas corpus purposes.  *See* 28 U.S.C. § 2254(b); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997).

Tripplehorn's written statement and her trial testimony about her exact location at the time of the kidnapping.  (RR, vol. 5, pgs. 187-88).  The trial court sustained the State's objection, blocking counsel's attempted impeachment. (*Id.*).  Regarding counsel's failure to attempt to impeach any of the other witnesses, petitioner fails to detail the grounds upon which counsel could have based any such impeachment, especially given the prior unsuccessful attempt.  It appears Mr. Evans is alleging counsel should have recalled the witnesses to cross-examine or impeach those witnesses based upon the variance in Ms. Tripplehorn's recollection.  As discussed below, petitioner fails to show how any of the other witnesses could have been questioned or impeached based upon Ms. Tripplehorn's memory of the events, i.e. he fails to show how Ms. Tripplehorn's statements could have impacted the testimony or truthfulness of any of the other witnesses.

Regarding counsel's failure to catch the purported *Brady* violation, petitioner contends counsel should have recognized the variance when the State spoke of it during opening statements.  Even if counsel were somehow deficient in this regard, petitioner fails to show prejudice, as counsel took full advantage of the variance to impeach Ms. Tripplehorn and support his defensive strategy at trial.  Regarding petitioner's assertion that counsel should have obtained a transcript of the grand jury testimony to review before trial, under state law "[t]he proceedings of the grand jury shall be secret." Tex. Code Crim. Proc. art. 20.02(a) (Vernon 2005).  Defense counsel can obtain a transcript of the grand jury proceedings only "on a showing . . . of a particularized need."  *Id.* art. 20.02(d).  More importantly, Evans claim is speculative since he has not shown Ms. Tripplehorn even appeared at the Grand Jury or that Ms. Tripplehorn's grand jury testimony varied from her written statement, if she did appear.  Such speculation will not form the basis for habeas corpus relief.  Mr. Evans again fails to demonstrate deficient performance.

Mr. Evans also asserts he "may have" received a smaller sentence had counsel called Mr. Evans's nephew during the punishment phase of trial. (28 U.S.C. § 2254 Habeas Corpus Brief in Support," doc. 12, pg. 20). As with his other claims of a failure to call witnesses, petitioner fails to establish the content of his nephew's testimony and how that testimony would have been favorable. *See Day*, 566 F.3d at 538. Because Mr. Evans offers nothing more than speculation and assumption as the basis of his assertions, he is unable to establish either deficient performance or prejudice resulting from his attorney's actions. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

### 4. Failure to Seek Continuance

In his third ground, petitioner contends he received ineffective assistance of counsel when counsel failed to ask for a continuance upon learning of the possible *Brady* violation. According to petitioner, after counsel learned of the variance in Ms. Tripplehorn's statements, he "should have asked for a continuance so that he could prepare to impeach Tripplehorn and the other witnesses for the prosecution for the veracity of Tripplehorn" and so he could "investigate and locate witnesses that could testify to the Character and Conduct, Reputaion and General credibility of Tripplehorn." ("28 U.S.C. § 2254 Habeas Corpus Brief in Support," doc. 12, pg. 26 (sic throughout)).

At the beginning of the second day of trial (after Ms. Tripplehorn testified) petitioner's trial attorney moved for a mistrial, arguing the change in Ms. Tripplehorn's story about where she was when she was attacked impacted the entire defensive strategy. (RR, vol 6, pgs. 8-10). The motion for a mistrial was denied. (*Id.* 10). In explaining his decision to not move for a continuance at that point, petitioner's trial counsel states in his affidavit,

> I made my objection and motion for mistrial to the court only after I had fully and strenuously cross-examined Ms. Tripplehorn on her inconsistent statements in front of the jury. In other words, I took advantage of the State's disclosure of Ms. Tripplehorn's inconsistent statements as fully and completely as I could under the circumstances. After the trial court had disposed of my objection and motion for mistrial, I realized that

any request for continuance would have been summarily rejected due to the fact that I was permitted full cross-examination of Ms. Tripplehorn. I had no meritorious grounds upon which to base any request for a continuance. Recognizing that the law does not require that I do a useless act, I strategically elected not to request a continuance.

(SHCR at pg. 48). Counsel's explanation shows the decision to not seek a continuance was based upon sound trial strategy. *See* Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006) (mandating a continuance after trial has begun will be granted only if "the applicant is so taken by surprise that a fair trial cannot be had"). Counsel's failure to request a continuance was a "virtually unchallengeable" strategic decision. *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Moreover, petitioner has failed to demonstrate prejudice. Petitioner Evans does not show the trial court would have granted a continuance, especially in view of the fact the victim was throughly cross-examined about the variance. He also cannot show what benefit he would have gained if the trial court had granted the continuance. Petitioner again bases his argument on his assumption of what unnamed "other witnesses" would have testified. Evidence beyond mere assumption is necessary for federal habeas corpus relief. *See Ross*, 695 F.2d at 1011.

5. Failure to Request Lesser Included Instruction

In his fourth ground, petitioner avers he received ineffective assistance of counsel because his trial attorney failed to request a lesser included offense instruction. Petitioner contends counsel should have sought a jury instruction on assault, unlawful restraint, and/or false imprisonment.[2]

In petitioner's trial counsel's affidavit attached to the State response to petitioner's state habeas corpus application, counsel addressed this contention,

---

[2] Petitioner challenges several aspects of his conviction, such as alleging his intent was not proven, as he testified at trial. A jury heard petitioner's testimony and the victim's testimony. It rejected petitioner's account and accepted Ms. Tripplehorn's. Any argument that would require this court to determine the credibility of any witness or to otherwise re-weigh any of the evidence presented at trial is impermissible. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979).

Applicant fails to discuss the fact that he and I conferred at length, prior to final argument on guilt-innocence, about whether or not I should request a lesser-included instruction in the court's charge. In fact, he and I discussed the advisability of asking that the court include an instruction on aggravated assault, a second degree felony as opposed to the first-degree charge he was facing. I explained to Applicant that in light of the serious discrepancies inherent in Ms. Tripplehorn's testimony, I believed that a successful prosecution hinged on getting the jury to accept her in-court testimony. If our defensive theory proved successful and I could persuade the jury to doubt Ms. Tripplehorn's veracity, particularly as it pertained to the specific manner in which she described how Applicant committed the indicted offense of aggravated kidnapping, then Applicant stood a good chance of an acquittal on the charge. I also explained to Applicant that Applicant's chances at outright acquittal were enhanced if he would permit me to try the case on an "all or nothing" strategy - that is, by forcing the jury to choose between convicting on the indicted offense or voting "not guilty." I believed and explained to Applicant that by including a lesser-included offense within the court's charge, it only served to increase the chances that the jury would convict since they wouldn't be forced to return a "guilty" or "not guilty" verdict on the indicted charge. Finally, I explained to Applicant that even if we were to request and include a lesser-included charge on aggravated assault, it would nevertheless expose Applicant to first-degree punishment, given his prior convictions which were alleged as enhancements. Since Applicant protested [sic] his innocence from the very beginning of this case, this "all or nothing"approach seemed to be the best strategy to use. After my having explained all of the advantages and disadvantages of requesting a lesser-included offense in the court's charge, it was Applicant's studied decision to forego any inclusion of a lesser-included offense in the court's charge and permit me to argue that the evidence did not support a guilty verdict on the indicted charge, in the hope of securing an outright acquittal.

(SHCR at pgs. 48-49). The defensive strategy of claiming self-defense along with counsel's closing statements bolsters counsel's explanation of his trial strategy:

[Mr. Evans] was, at least, initially justified. He said he continued to smack her when she was on the ground. That would probably be a little problematic if he had the charge of assault causing bodily injury, but it's not problematic for aggravated kidnapping because he wasn't trying to take her anywhere. He opened the door into her, knocked her to the ground, smacked her a couple of times and then was trying to get her out of the way. That's not aggravated kidnapping. That might be assault. The State didn't want an assault, they didn't want a Class A misdemeanor. They wanted aggravated kidnapping because we [sic] want the throat.

(RR, vol. 6, pg. 161).

It is clear that the reason defense counsel did not request a lesser-included offense instruction for assault was based upon trial strategy, and Petitioner does not contradict or even acknowledge defense counsel's explanation that Petitioner concurred with this strategic decision.  As such, it is "virtually unchallengeable."  *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has failed to show his attorney was deficient.  *See id.*, 466 U.S. at 687, 104 S.Ct. at 2064.  The state court's determination was not contrary to clearly established federal law nor was it based upon an unreasonable determination of the facts in light of the evidence before it.  *See* 28 U.S.C. § 2254(d).

### 6.  Failure to Request Intoxication Instruction

In his fifth ground, petitioner contends counsel was ineffective for failing to request an "intoxication instruction" in mitigation of punishment.  Under Texas law, "[e]vidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried."  Tex. Pen. Code § 8.04(b) (Vernon 2011).  In order to receive such an instruction, a defendant must establish (i) the intoxication caused the defendant not to know his conduct was wrong or (ii) "that it caused him to be incapable of conforming his conduct to the requirements of the law that he violated."  *Hernandez v. Johnson*, 213 F.3d 243, 250 (5th Cir. 2000) (citing *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987)).  Stated differently, even if a person is intoxicated, before he could receive an intoxication instruction he must additionally demonstrate such intoxication caused him to become "insane."  If a defendant fled from the scene of the crime, especially if he did so with force, hid from the police, or disposed of evidence of the crime, such actions tend to indicate the defendant was capable of conforming his conduct to the requirements of the law.  *Id.* at 251.  In such cases, an intoxication instruction is not warranted.  *Id.*

At trial, Mr. Evans testified he was "pretty well lit" and was still drinking at the time of the incident.  (RR, vol. 6, pgs. 54, 59).  One of the witnesses testified Mr. Evans was "kind of staggering"

at the time he came upon the scene and appeared to be intoxicated because his actions were "sluggish." (*Id.*, vol. 5, pgs. 20, 30).   Thus, there was evidence Mr. Evans was intoxicated at the time of the incident.   There was also evidence, however, that Mr. Evans remained capable of conforming his conduct to the requirements of law and that his intoxication did not render him "insane" for purposes of the Texas statute.   Mr. Evans himself testified he fled from the scene.   (RR, vol. 6, pg. 68).   One of the State's witnesses testified she stood in front of Mr. Evans's moving vehicle in an attempt to stop him from leaving the scene, and Mr. Evans tried to run her over before she jumped out of the way.   (*Id.*, vol. 5, pg. 108).   Another witness testified he also tried to stop Mr. Evans's vehicle.   (*Id.*, pg. 119).   Testimony indicated that after petitioner fled the scene, he went to the parking lot of an apartment complex approximately one block away from the park, where he unintentionally locked his cell phone and keys in the vehicle.   (*Id.*, vol. 6, pg. 70).   He then walked to a friend's house.   The friend testified, on behalf of the State, that he gave Mr. Evans a ride to Mr. Evans's house.   (*Id.*, vol. 5, pg. 207).   As the friend was approaching Mr. Evans's house, Mr. Evans told him, "if there's cops there, don't stop." (*Id.* at pg. 210).   When the friend asked Mr. Evans what he had done, Mr. Evans simply stated, "you'll find out."   (*Id.*).

Consequently, while there was evidence of petitioner's intoxication, there was no evidence whatsoever that the intoxication caused him to not know his conduct was wrong.   To the contrary, petitioner's flight and hiding subsequent to the incident indicates knowledge of wrongdoing.   *See Hernandez*, 213 F.3d at 251.

Petitioner's trial counsel recognized this fact, as he stated,

> I did not request such an [intoxication] instruction because the totality of evidence developed at trial did not raise the issue of temporary insanity caused by intoxication.   Although Applicant did testify that he had been drinking . . . he did not testify at any time that he did not know that his conduct was wrong.   Further, there was no evidence from any lay or expert witness that Applicant was insane or that he did not

know that his conduct was wrong as a result of acute intoxication.  Applicant never testified to any memory loss regarding the offense in question due to intoxication. Indeed, the reporter's record . . . shows that Applicant's recall of the incident was excellent.  He never indicated to me during our many conferences or during his testimony on the stand that he did not know the difference between right or wrong on the night in question.  Finally, all of Applicant's actions taken after the incident, including his exit from the crime scene (where he nearly ran over a woman who blocked the path of his pick-up) and his subsequent flight to Oklahoma City, Oklahoma (where he was eventually arrested by the U.S. Marshal's Service) were consistent with consciousness of guilt and completely inconsistent with any claim of temporary insanity caused by intoxication.

(SHCR, pgs. 49-50).[3]  Since there were no grounds warranting an intoxication instruction, counsel was not ineffective for failing to seek such an instruction.  *See Koch*, 907 F.2d at 527.

In his sixth ground, petitioner contends he received ineffective assistance of counsel on appeal. Because many of petitioner's claims in this ground relate to the actions of the prosecution and the trial court which are challenged in grounds seven and eight, respectively, the Court will discuss petitioner's claim of  ineffective assistance of appellate counsel after its discussion of grounds seven and eight.

### C.  Prosecutorial Misconduct

In his seventh ground, petitioner contends the prosecutor improperly commented on petitioner's post-arrest silence.  In his closing statements, petitioner's attorney repeatedly attacked the veracity of the victim by emphasizing the variance in the details of the victim's recollection as reflected in the statement she gave immediately after the incident and her trial testimony (as discussed in detail above). (RR, vol. 6, pgs. 150-162).  In the State's rebuttal to that closing argument, the following transpired:

[PROSECUTOR]:  And it's interesting and ironic that the Defense will nitpick any discrepancy whatsoever in witness statements and testimony that they've had access to for over a year and this is the first time Mr. Evans has given his version. See, the

---

[3]  Mr. Evans did not dispute that he fled to Oklahoma City shortly after the incident.  (*Id.*, vol. 6, pg. 73).  A United States Marshal testified as to the complex undertaking involved in tricking Mr. Evans into coming out into the open in Oklahoma City, at which point he was arrested.  (*Id.*, vol. 5, pg. 20).

discovery stuff isn't [reciprocal].  I don't have the benefit of discussing the testimony with Mr. Evans a year ago, a week ago, a month ago.  We –

[DEFENSE COUNSEL]:  Object.  That is a comment on my client's right to not have testified at any point before this trial, Your Honor.

THE COURT:  Overruled.

[PROSECUTOR]:  But he did testify, and so we can comment on what he had to say. And so we get to -- we get to hear this today, and he has had the benefit of all these witness statements for well over a year.   And it's ironic that we will nitpick discrepancies in these witness statements and testimony, and if they-- if they all aligned like the stars align somehow, then we would be saying, well, hey, they got together and put this story together.  You see how it all fits together.

(*Id.*, pgs. 163-64).

In *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the Supreme

Court held the Due Process Clause prohibits impeachment of a defendant's exculpatory story, told for

the first time at trial, by using the defendant's post-arrest silence.

The test for determining whether a prosecutor's remarks constitute a comment on a defendant's silence is a twofold alternative: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.

*United States v. Mackay*, 33 F.3d 489, 495 (5th Cir.1994).

While the better course might have been for the prosecutor to avoid this area of argument

altogether, the prosecutor's statement does not satisfy either of the *Mackay* scenarios.  The statement

was given in rebuttal to a closing argument that attacked variances in the details of the victim's

recollection.  The prosecutor did not direct the jury to draw any conclusion from the fact of defendant's

pre-trial silence but instead suggested defendant was able to point out variances in the details of the

victim's testimony because he had a witness statement he was able to evaluate well before trial and

bring it up against the victim at trial—an advantage not equally enjoyed by the prosecution.  Much like

the statement at issue in *United States v. Martinez*, 151 F.3d 384, 392 (5th Cir. 1998), the statement made at Mr. Evans's trial was not a direct comment on Mr. Evans's pre-trial silence but was rather an attempt to rebut a defense strategy.

This conclusion mirrors the state appellate court's holding:

> The State's argument was merely a response to the arguments of opposing counsel. Under these circumstances, we do not believe the comment was manifestly intended as a comment on Appellant's exercise of a constitutional right, nor was it of such a character as would cause a jury to necessarily and naturally draw an inference of guilt from the implication that Appellant exercised that right.

*Evans*, 2009 WL 57036, at *8. The state courts' determinations on this issue was not contrary to clearly established federal constitutional law nor was it otherwise unreasonable. *See* 28 U.S.C. § 2254(defendant). This ground should be denied.

### D. Trial Court Error

In his eighth ground, petitioner contends the trial court erred in several areas: (i) by allowing the prosecutor to improperly comment on petitioner's pre-trial silence, over defense counsel's objection; (ii) by allowing an invalid pen packet to be used for enhancement purposes; (iii) by denying defense counsel's request for grand jury minutes so as to pinpoint when the State knew of the victim's change in her statement as to her location when she was grabbed; (iv) by denying defendant's request for a mistrial after the victim's inconsistent statement came to light; and (v) by allowing testimony during the punishment phase regarding a prior robbery committed by petitioner. The third and fourth of these arguments were not presented in the petition for discretionary review or on state habeas corpus review. Because they were not properly exhausted, they are procedurally barred and the Court is unable to discuss their merits. *See* 28 U.S.C. § 2254(b); *Nobles*, 127 F.3d at 420.

Regarding the exhausted grounds (one, two, and five), errors of state law are cognizable on habeas corpus review only if they "run afoul of a specific constitutional right or render the petitioner's

trial fundamentally unfair." *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994). If the state trial court's

rulings do implicate a federal constitutional right, habeas corpus relief is granted only where the error

has a "substantial and injurious effect or influence in determining the jury's verdict." *ShisInday v.*

*Quarterman*, 511 F.3d 514, 524 (5th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113

S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)).

Petitioner contends the trial court erred by allowing the prosecutor to improperly comment on

petitioner's pre-trial silence, over defense counsel's objection. As discussed above, the statement made

by the prosecutor was not a clear comment on petitioner's right to remain silent. As such, the trial court

did not err by allowing it. Even if it was an improper comment, however, "any alleged error was

harmless." *Evans*, 2009 WL 57036, at *9. As the state appellate court held,

> The prosecutor's comment did not contribute to [Evans's] conviction or punishment
> beyond a reasonable doubt because: (1) [Evans] testified at trial, (2) the comment was
> responsive to [Evans's] argument, (3) the comment was, at best, an indirect comment
> on [Evans's] exercise of his right to remain silent, (4) the statement did not reflect on
> [Evans's] credibility, and (5) the statement was made at the beginning of the State's
> rebuttal argument and was not repeated or otherwise emphasized during the remainder
> of the trial.

*Id.* This Court further notes that the testimony of the victim in this case was clear and unwavering and

established all of the elements of aggravated kidnapping, and the testimony of several other witnesses

corroborated the victim's version. Petitioner gave his side of the story, but the evidence of his guilt

(which was clearly credited by the jury) was overwhelming. *See United States v. Rodriguez*, 43 F.3d

117, 123 (5th Cir. 1995). Petitioner has not shown the trial court's ruling, even if it were erroneous,

had a "substantial and injurious effect or influence in determining the jury's verdict." See *ShisInday*,

511 F.3d at 524. Accordingly, he has not demonstrated any entitlement to habeas relief on this issue.

Petitioner also alleges the trial court improperly allowed an invalid pen packet to be used for

enhancement purposes. During the punishment phase of petitioner's trial, the State sought to introduce

evidence of one of defendant's prior convictions for "storehouse breaking" out of Maryland in 1982. (RR, vol. 7, pg. 25; vol. 8, State's Ex. 56).  Defense counsel objected that the "packet" did not include a formal judgment but was rather "just docket entries."  (*Id.*, vol. 7, pg. 25).  The trial court responded, " I'm not sure it has to be a conviction, does it?"  The trial court then overruled defendant's objection. (*Id.* at 26).

The exact requirements of a pen packet are a matter of state law, not implicating a federal constitutional right and consequently are not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Rubino v. Lynaugh*, 845 F.2d 1266, 1271 (5th Cir. 1988) (emphasizing *"*the determination of what prior crimes should count for enhancement purposes under Texas law [is] solely for the State and not cognizable in federal habeas corpus"); *Johnson v Scott*, 47 F.3d 427, 1995 WL 71386, at *3 (5th Cir. 1995) (holding the trial court's actions regarding the admission of petitioner's pen packet at trial was a matter of state law not cognizable on review).

Even if the claim were cognizable, it is meritless.  Under Texas law, a formal judgment is not necessary in order for evidence of a prior offense to be admitted during the punishment phase of a trial. *See Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 2007).  The trial court was presented with documentary evidence (in the form of a handwritten docket sheet) establishing Mr. Evans (as identified by his fingerprints on a fingerprint card) was charged with and found guilty of the offense of storehouse breaking.  It appears as though the State provided sufficient information to warrant the admission of the evidence of the conviction.  *See id.*  Accordingly, the trial judge's ruling appears to

have been in compliance with state law. Petitioner has not presented a meritorious ground of relief cognizable in federal habeas corpus.

Petitioner finally contends the trial court erred by allowing testimony during the punishment phase regarding a prior robbery committed by petitioner.  During the punishment phase of trial, the State presented the testimony of a Ms. Lee, who petitioner robbed at knife point, and a Mr. Hugg, who was the police officer who investigated that robbery.  Ms. Lee testified defendant held her neck back and showed her a knife before locking her in a bathroom and robbing the store in which Ms. Lee was working.  (RR, vol. 7, pg. 41).  The police officer corroborated Ms. Lee's testimony.  (*Id.* at pgs. 34-35).  The trial court allowed the testimony over defendant's objection.  (*Id.* at pgs. 31-32).

Petitioner again presents a challenge to the state trial court's application of state law.  Such an argument is not cognizable in federal habeas.  *See Estelle*, 502 U.S. at 67-68, 112 S.Ct. at 480.  Even if this were a cognizable argument, petitioner has not shown any error.  The Texas Code of Criminal Procedure permits the trial court to allow, during punishment, evidence of "any matter the court deems relevant to sentencing."  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).  This includes, but is not limited to the following:

> the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*Id.*  The state court deemed Ms. Lee's and Mr. Hugg's testimonies relevant to sentencing, and petitioner has failed to show that determination was incorrect.  Again, however, this is a state law question which has already been decided by the state courts, and it is not cognizable on federal habeas review.  *See*

*Rubino*, 845 F.2d at 1271.  Petitioner has failed to present any cognizable, meritorious issue in his eighth ground.

### E.  Ineffective Assistance of Appellate Counsel

Petitioner's sixth ground is a claim his appellate attorney rendered ineffective assistance when he failed to (i) consult with petitioner before filing the appeal; (ii) raise ineffective assistance of trial counsel based upon the challenges to trial counsel's performance petitioner makes in this federal petition; (iii) challenge the trial court's allowing the prosecutor's comments on petitioner's right to remain silent; (iv) challenge Ms. Lee's testimony during the punishment phase of trial; (v) challenge the admission of the pen packet from Maryland; and (vi) challenge the sufficiency of evidence.  All of these grounds are devoid of any analytical development and are simply conclusory statements.  The Court will nevertheless address them to the best of its ability given their lack of detail.

A defendant has a constitutional right to effective assistance of counsel on first appeal.  *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000).  Where a petitioner argues counsel failed to assert or fully brief a particular claim on appeal, he must meet both prongs of the *Strickland* test, i.e. he must show his attorney's performance was both deficient and prejudicial.  *Id.* (citing *Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)).  Counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064.  The appellate attorney need not raise every nonfrivolous ground available on appeal.  *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006).  Counsel's performance is prejudicial if, but for the appellate attorney's unreasonable failure to raise an issue, the defendant would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

Regarding the first claim, petitioner fails to met either of these prongs.  Attached to the affidavit of petitioner's trial counsel (who was also petitioner's appellate counsel, at petitioner's request)

submitted in response to the state habeas corpus application are "several pieces of correspondence between [counsel and Mr. Evans] while [Evans's] appeal was pending." (SHCR at pg. 50). Counsel continues, "[Evans] was adequately apprised of the progress of his appeal at all times. His complaint that I failed to consult with him before filing the appellate brief has no merit." (*Id.*). Petitioner failed to show counsel did not consult with him prior to filing the appeal, and has failed to prove deficient performance. Moreover, petitioner has failed to show prejudice, i.e. he has failed to show how he would have prevailed on appeal if counsel had consulted (or had consulted more often) with Mr. Evans. *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764.

With respect to the other claims of ineffective assistance of appellate counsel, the Court has discussed those issues previously, and that analysis shows why there was not any error for appellate counsel to raise based upon these contentions. Consequently, the appellate attorney was not deficient for failing to raise these contentions on direct appeal. *See Amador*, 452 F.3d at 410.

Petitioner also contends counsel should have raised a sufficiency claim on appeal. At trial, Ms. Tripplehorn's testimony satisfied all of the elements of aggravated kidnapping. *See* Tex. Pen. Code § 24.04(b) (establishing a person commits aggravated kidnapping if he "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense"); (RR, vol. 5, pgs. 151-52 (Ms. Tripplehorn's testimony that petitioner grabbed her from behind, threw her into his truck and held her down while standing over her brandishing a knife)). There were no grounds upon which appellate counsel could have raised any sufficiency claim. Petitioner has failed to demonstrate deficient performance by appellate counsel for failing to raise a frivolous issue. *See Amador*, 452 F.3d at 410. Petitioner has not to presented any meritorious claim for ineffective assistance of appellate counsel, as he has failed to demonstrate either deficient performance or prejudice resulting therefrom. *See Hughes*, 220 F.3d at 348.

V.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief.

Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by

petitioner DEWEY MACK EVANS be DENIED.

VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation

to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of February 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).